UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

SAHARA ABDI,

                Plaintiff,

          -against-

BROOKHAVEN SCIENCE ASSOCIATES, LLC,
a/k/a and/or d/b/a BROOKHAVEN NATIONAL
LABORATORY, et al.,

                Defendants.

------------------------------------------------------------------x

MEMORANDUM AND ORDER
CV 05-2741

(Wexler, J.)

APPEARANCES:

        TRISTAN C. LOANZON, ESQ.
        Attorney for Plaintiff
        Seven Penn Plaza, Suite 312
        New York, New York  10001

        MORGAN, LEWIS & BOCKIUS LLP
        BY: CHRISTOPHER A. PARLO and AMANDA N. SLATIN, ESQS.
        Attorneys for Defendants
        101 Park Avenue
        New York, New York  10178

WEXLER, District Judge

        Sahara Abdi ("Abdi") brings this action against defendants Brookhaven Science

Associates ("BSA"), Peter Bond ("Bond"), Andrew Ferguson ("Ferguson"), Martin Gormezano

("Gormezano"), and Frank Quarant ("Quarant") (collectively, "defendants"), asserting claims for

or under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. ("Title VI"); Title

VII of Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"); 42 U.S.C. §§ 1981,

1985(3), and 1986; the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq.

("NYSHRL"); breach of contract; and intentional infliction of emotional distress.  The individual

defendants are sued in their official and individual capacities.  Defendants move to dismiss all

but the Title VI and Title VII claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") for failure to state a claim upon which relief can be granted.[1] Abdi opposes the motion.

## I. BACKGROUND

For present purposes, the allegations of the complaint can be summarized as follows: Abdi is a female Muslim from Somalia, Africa. In November 2002, she began working at Brookhaven National Laboratory ("BNL") in Upton, New York, a facility in which research in various areas of atomic science is conducted. BNL is managed and operated by BSA, a non-profit, New York limited liability company, under a contract with the Department of Energy. Abdi, a contract employee for DecisionOne, worked for BSA as a Systems Administrator in the Information Technology Division (the "ITD") under the direct supervision of Ferguson and Gormezano. Quarant was the manager of the ITD, and Bond headed the ITD.

Abdi alleges that she was subjected to discrimination by defendants based on her race/color and religion and then faced retaliation in the form of harassment and wrongful termination because of her opposition to defendants' discriminatory practices. In this respect, Abdi alleges that in or about March 2003, she was assigned to share an office with the only other African-American employees in her work group. While the other employees in her group were assigned to two-person, all white offices, she and her office mates shared the only three-person office. Abdi and her office mates brought their concerns regarding the appearance of "mini

---

[1]Although the notice of motion and memorandum of law denote only BSA as the moving party, the parties' motion papers treat the motion as having been made by all defendants. Accordingly, the Court will consider the motion as to all defendants.

segregation" to Ferguson, who promised to correct the arrangement, but failed to do so. In April 2003, Gormezano made an offensive remark to Abdi at a company lunch after overhearing Abdi tell a coworker that she did not eat pork because of her religion. Gormezano allegedly commented, "Sahara, we eat everything here. We eat camels, goats and snakes." Complaint ¶ 22. According to Abdi, Gormezano was involved in two other incidents of harassment toward her.

On May 1, 2003, Abdi met with Ferguson, who allegedly made several comments implying that Abdi was not qualified for her position and that coworkers felt the same way about her, and that she was only hired because of her friendship with a manager named Scott Bradley. Nevertheless, Ferguson also told her: "You are doing a good job. Your users love you. I have not heard any complaints from them. But I know you miss your family and if you wanted to leave I would understand. But stay until the summer ends. . . . I don't know what will happen in the future, but you are ok for now." Complaint ¶ 30. Abdi took this as a veiled threat to terminate her. The following day, May 2, Abdi asked Ferguson if she should be looking for a new job. He stated that her position would be uncertain if Bradley left BNL. Later that day, Abdi met with another manager, Phil Garguilo ("Garguilo"), and discovered that Ferguson had concocted or spread a story that Abdi was unable to fix a file server, allegedly to tarnish Abdi's excellent record and provide a pretext to discipline, demote or fire her.

Abdi immediately notified Bond, the head of the ITD, regarding her discussions with Ferguson. On May 5, Bond stated that he followed up with Ferguson. He insisted to Abdi that she had misinterpreted Ferguson's comments and dismissed her complaint. Later that day, Ferguson approached Abdi and stated, "I made two mistakes last week: (1) I trusted you, and (2)

3

I felt sorry for you. That will never happen again. There will be a third person in the room when I am dealing with you." Complaint ¶ 36.

Abdi again went to Garguilo, who set up a meeting with Bond, Quarant, Ferguson, and Abdi. At that meeting, Abdi raised the issues of Ferguson's "statements and threats," the "black office," and Gormezano's "offensive remarks." Complaint ¶ 37. During the meeting, Quarant allegedly stated that three days had been wasted on "a minor issue" and reassured Abdi that she was not being laid off and asked her to forget what happened. Complaint ¶ 38. Ferguson then apologized for his offensive comments. Nevertheless, according the Abdi, her concerns of racial discrimination were not addressed and Gormezano's offensive remarks were not discussed. According to Abdi, Quarant and Gormezano, whom Abdi alleges were friends and long-time neighbors, privately discussed Abdi and her concerns before the meeting. Abdi requested a transfer to another department, but her request was denied, and she continued to report to the same direct supervisors.

After these events, Abdi's workload gradually decreased. In July 2003, she was notified that she was being laid off at the end of that month due to budget constraints, an alleged pretext. Abdi was laid off at the end of July 2003. According to Abdi, the purported "budget crunch" was untrue, as demonstrated when Bond announced the award of additional funding on August 8, 2003, only one week after Abdi was laid off.

Just before she was laid off, Abdi contacted BSA's Diversity Manager, Shirley Kendall, to discuss her complaints. Kendall initiated an investigation of Abdi's complaints, but the investigation ceased when Abdi was laid off. Sometime thereafter, Abdi filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). In February

2004, in response to Abdi's EEOC complaint, Kendall conducted further investigation and concluded that inappropriate remarks directed at Abdi constituted a hostile work environment.

According to Abdi, the EEOC issued a Letter of Determination, dated November 19, 2004, in which it concluded that "BSA discriminated against [Abdi] based on her race and religion, and then retaliated against her for complaining." Complaint ¶ 45. The EEOC also concluded that the decision to reduce Abdi's workload and discharge her reflected "a clear violation of Title VII." Complaint ¶ 11.

On March 8, 2005, the EEOC issued a Notice of Right to Sue, and Abdi commenced this action on June 8, 2005, asserting the following claims: (1) discrimination under Title VI against BSA (Count I); (2) discrimination and retaliation under Title VII against BSA (Counts II and III); (3) discrimination and retaliation under § 1981 against all defendants (Counts IV and V); (4) conspiracy and failure to prevent a conspiracy to interfere with civil rights under § 1985(3) and 1986 against all defendants (Count VI); (5) violation of NYSHRL against all defendants (Count VII); (6) breach of contract against BSA (Count VIII); and (7) intentional infliction of emotional distress ("IIED") against the individual defendants (Count IX).

Defendants move to dismiss all but the Title VI and Title VII claims.


II. DISCUSSION

A. Legal Principles on Motion to Dismiss Under FRCP 12(b)(6)

It is well settled that a complaint should not be dismissed "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claims which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Maggette v. Dalsheim, 709 F.2d 800, 803 (2d Cir. 1983). On a motion to dismiss under FRCP 12(b)(6), the allegations in plaintiff's complaint

must be accepted as true. <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972) (per curiam). Moreover, the court's consideration is limited to the "facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." <u>Kramer v. Time Warner Inc</u>, 937 F. 2d 767, 773 (2d Cir. 1991). The court may also consider "matters of which judicial notice may be taken." <u>Id.</u> (citing Fed. R. Evid. 201). The court may not consider other matter unless it gives notice to the parties that the motion is being converted to a motion for summary judgment under FRCP 56 and allows the parties to conduct necessary discovery and submit pertinent material. <u>Id.</u> With these principles in mind, the Court considers defendants' motion.

B. <u>Section 1981 Claims</u>

The individual defendants argue that the § 1981 claims, Counts IV and V, should be dismissed because Abdi fails to allege facts sufficient to constitute intentional discrimination or to support individual liability of these defendants under § 1981.

Section 1981 prohibits intentional race-based discrimination in the workplace, and provides for individual liability on the part of non-employers. <u>See</u> <u>Whidbee v. Garzarelli Food Specialties, Inc.</u>, 223 F.3d 62, 75 (2d Cir. 2000). To state a claim under § 1981, a plaintiff must allege facts supporting the following three elements: (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate against the plaintiff on the basis of race; and (3) that the defendant discriminated in connection with one of the statute's enumerated activities, one of which is the right to make and enforce contracts. <u>Brown v. City of Oneonta</u>, 221 F.3d 329, 339 (2d Cir. 2000). For a claim of individual liability, a plaintiff "must demonstrate some affirmative link to causally connect the actor with the discriminatory action. . . . [P]ersonal liability under section 1981 must be predicated on the actor's personal

involvement.'" Whidbee, 223 F.3d at 75 (internal quotation marks omitted). Personal involvement "includes not only direct participation in the alleged violation but also gross negligence in the supervision of subordinates who committed the wrongful acts and failure to take action upon receiving information that constitutional violations are occurring." Patterson v. County of Oneida, 375 F.3d 206, 229 (2d Cir. 2004).

Upon consideration, the Court finds that Abdi sufficiently alleges intent and personal involvement for individual liability under § 1981 as she sufficiently alleges that the individual defendants, all of whom were direct supervisors or higher-level management, either directly participated in discriminatory and/or retaliatory conduct or failed to properly address her complaints, see Complaint ¶¶ 22-25, 32-40.

Accordingly, defendants' motion to dismiss the § 1981 claims, Counts IV and V, as against the individual defendants is denied.

C. Sections 1985(3) and 1986 Claims

Abdi asserts, as Count VI, claims under §§ 1985(3) and 1986 for conspiracy and failure to prevent a conspiracy to violate her rights under § 1981 to make and enforce her employment contract. BSA argues that Abdi's § 1985(3) claim is insufficient because (1) she fails to adequately plead a conspiracy; (2) the claim is barred by the "intracorporate conspiracy doctrine"; and (3) an alleged violation of § 1981 cannot form the basis of a § 1985(3) claim. BSA further argues that the § 1986 is likewise insufficient because there can be no such claim absent a viable conspiracy claim under § 1985.

Section 1985(3) prohibits two or more persons from conspiring to "depriv[e], either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. . . ." 42 U.S.C. §1985(3). Section 1985(3) does

not create any substantive right; rather it provides a remedy for conspiracies to violate a person's right to equal protection. See Sherlock v. Montefiore Med. Ctr., 84 F.3d 522, 527 (2d Cir. 1996). To state a claim under § 1985(3), a plaintiff must allege "(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir. 1999). "A conspiracy need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct." Id. (internal quotation marks omitted). Significantly, the conspiracy must be motivated by " 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.' " Id. (quoting Mian v. Donaldson, Lufkin & Jenrette Secs. Corp., 7 F.3d 1085, 1088 (2d Cir. 1993)).

Upon consideration, the Court finds that Abdi fails to sufficiently allege the existence of an agreement between the individual defendants to discriminate against her. Abdi's allegation that Quarant and Gormezano have been friends and long-time neighbors and that they discussed Abdi and her concerns prior to the May 5 meeting does not sufficiently allege that they or any of the other individual defendants conspired for the purpose of depriving Abdi of her rights.

Even assuming that Abdi can sufficiently plead the existence of an agreement, her claim fails as a matter of law because an alleged violation of § 1981 cannot form the basis of a conspiracy under § 1985(3). See Tardd v. Brookhaven Nat'l Lab., 407 F. Supp. 2d 404, 413 (E.D.N.Y. 2006); see also Brown v. Philip Morris, Inc., 250 F.3d 789, 805-06 (3d Cir. 2001); Jenkins v. Arcade Bldg. Maint., 44 F. Supp. 2d 524, 532-34 (S.D.N.Y. 1999). Because Abdi

does not urge any other basis for her § 1985(3) claim, the claim is dismissed with prejudice. Given this determination, the Court need not address defendants' assertion of the "intracorporate conspiracy doctrine."

As for the § 1986 claim, no such claim lies unless there is a viable conspiracy claim under § 1985. See Gagliardi v. Village of Pawling, 18 F.3d 188, 194 (2d Cir. 1994) (upholding dismissal of § 1986 claim based on dismissal of § 1985(3) claim). Thus, the § 1986 claim is also dismissed with prejudice.

Accordingly, the §§ 1985(3) and 1986 claims, Count VI, are dismissed with prejudice.

## D. NYSHRL Claim

Defendants argue that the NYSHRL claim, Count VII, is barred by the federal enclave doctrine and, in any event, that it must be dismissed as against the individual defendants for failure to state a claim.

### 1. Federal Enclave Doctrine

Defendants argue that the BNL site is a "federal enclave" governed exclusively by federal law, thereby making the NYSHRL inapplicable. As defendants' argue, a federal enclave is "land over which the United States government exercises exclusive federal jurisdiction." Kelly v. Lockheed Martin Servs. Group, 25 F. Supp. 2d 1, 2 (D.P.R. 1998). However, " '[w]hether federal enclave jurisdiction, a form of federal question jurisdiction, exists is a complex question[], resting on such factors as whether the federal government exercises exclusive, concurrent or proprietarial jurisdiction over the property, when the property became a federal enclave and what the state law was at that time, whether the law is consistent with federal policy, and whether it has been altered by national legislation.' " Id. (quoting Celli v. Shoell, 40 F.3d 324, 328 n.4 (10th Cir.1994)).

9

To support their argument that the BNL site is a federal enclave, as to which the NYSHRL does not apply, defendants submit a "Deed of Cession," dated July 17, 1933, as an exhibit to their moving papers. According to defendants, the deed shows that the "State of New York 'grant[ed] and releas[ed] to the United States of America the jurisdiction of the State of New York on and over the [BNL site],' with New York retaining jurisdiction only 'so far as that all civil and criminal process . . . may be executed thereon . . . .' " Memorandum of Law in Support of Defendant's Motion to Dismiss, at 4 (quoting Affidavit of Christopher A. Parlo in Support of Defendant's Motion to Dismiss, Ex. B). Abdi disputes the relevance and authenticity of the deed, arguing, inter alia, that the deed is not properly before this Court on a motion to dismiss and that, in any event, it is not clear whether the deed covers the land where the alleged wrongful acts were committed or whether the deed created a federal enclave.

The Court agrees with Abdi that the deed is not properly before the Court on this motion to dismiss; therefore, it will not be considered at this time. Given the apparent significance of the deed to the determination of this issue, defendants' motion to dismiss the NYSHRL claim under the federal enclave doctrine is denied without prejudice. Defendants may revisit this issue following adequate discovery. See Tardd, 404 F. Supp. 2d at 418-19.

2. Sufficiency of the NYSHRL Claim Against the Individual Defendants

Alternatively, defendants argue that the NYSHRL claim must be dismissed as against the individual defendants because they are not "employers" under § 296(1) and because Abdi fails to sufficiently allege that any of the individual defendants aided and abetted another defendant in the alleged prohibited act. Abdi contends that the complaint sufficiently alleges that each of the individual defendants either participated in the discriminatory conduct or had the power to make personnel decisions.

The NYSHRL provides that it is unlawful "[f]or an employer . . . , because of the . . . race, creed, color [or] national origin . . . of any individual . . . , to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a). Moreover, § 296(6) prohibits any person from aiding and abetting in the discriminatory act. Id. § 296(6) ("It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."). Section 296 imposes liability on an individual employee only if that employee (a) has an ownership interest in the employer, or is the employer; (b) has the power to make, rather than carry out, personnel decisions; or (c) actually participates in the conduct giving rise to the discrimination claim. See Hicks v. IBM, 44 F. Supp. 2d 593, 597 (S.D.N.Y. 1999).

Upon consideration, the Court finds that the complaint sufficiently alleges that Bond and Quarant had power to make personnel decisions, as head and manager, respectively, of ITD, and that they failed to properly address Abdi's complaints of discrimination; and that Gormezano and Ferguson, as Abdi's supervisors, had power to make personnel decisions and/or actually participated in the alleged discriminatory and/or retaliatory conduct.

Accordingly, defendants' motion to dismiss the NYSHRL claim, Count VII, against the individual defendants is denied.

E. Breach of Contract Claim

Abdi purports to base her breach of contract claim against BSA on an "implied promise that Plaintiff would be treated fairly and in good faith and not discriminated against due to race and/or color during the course of her employment." Complaint ¶ 103. She further alleges that BSA's employee handbook created an "implied contract with the Plaintiff that Defendants would

11

not unlawfully discriminate against the Plaintiff during her employment relationship with respect to personnel decisions." Complaint ¶ 104. In other words, Abdi maintains that she had an "implied agreement of employment," breached by BSA's failure to provide a "respectful and harassment-free workplace." Plaintiff's Mem. of Law in Opposition to Defendants' Partial Motion to Dismiss, at 16.

BSA argues that this claim should be dismissed because, inter alia, Abdi was an at-will employee and she fails to meet the requirements in Weiner v. McGraw-Hill, Inc., 443 N.E.2d 441, 445 (N.Y. 1982), to overcome the at-will presumption and maintain an action for breach of contract. The Court agrees with BSA.

Under New York law, an employment relationship covering an indefinite period of time is deemed to be at-will, and as such is terminable at any time by either party, with or without cause. Sabetay v. Sterling Drug, Inc., 514 N.Y.S.2d 209, 211 (N.Y. 1987); Murphy v. American Home Prods. Corp., 461 N.Y.S.2d 232, 237 (N.Y. 1983); Gmora v. State Farm Mut. Auto. Ins., 709 F. Supp. 337, 338 (E.D.N.Y.), aff'd, 888 F.2d 1376 (2d Cir. 1989). The New York Court of Appeals in Weiner recognized that, in limited circumstances, a plaintiff can overcome the at-will presumption and maintain a breach of contract claim. See Weiner, 443 N.E.2d at 445. Abdi's allegations regarding BSA's employee handbook and implied promise not to discriminate and provide a "respectful and harassment-free workplace" fail to satisfy the requirements for such a claim. An employer's general statements reiterating its obligation to abide by existing law concerning discrimination and equal employment do not serve as the basis for such a claim. See Burger v. Litton Indus., Inc., 1996 WL 421449, at *22 (S.D.N.Y. Apr. 25, 1996); Blaise-Williams v. Sumitomo Bank, Ltd., 592 N.Y.S.2d 41, 42 (App. Div., 1st Dep't 1993).

Accordingly, the breach of contract claim, Count VIII, is dismissed with prejudice.

F. IIED Claim

Defendants argue that the IIED claim is insufficiently plead and, in any event, is barred by a one-year statute of limitations. The Court agrees that the claim is time-barred.

Under New York law, the statute of limitations for such a claim is one year. See Shenandoah v. Hill, 799 N.Y.S.2d 892, 894 (Sup. Ct., N.Y. County 2005). Abdi filed this action on June 8, 2005. Because all of the alleged incidents occurred prior to June 8, 2004, this claim is time-barred.

Accordingly, the IIED claim, Count IX, is dismissed with prejudice.


## III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part. The motion to dismiss is (1) denied as to Counts IV and V, the § 1981 claims; (2) granted as to Count VI, and the § 1985(3) and § 1986 claims are dismissed with prejudice; (3) denied as to Count VII, the NYSHRL claim; (4) granted as to Count VIII, and the breach of contract claim is dismissed with prejudice; and (5) granted as to Count IX, and the IIED claim is dismissed with prejudice.

SO ORDERED.

_____/s/_____
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
       August 16, 2006

13